IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| NICHOLAS A. MATHENY<br>3485 Purdue Street<br>Cuyahoga Falls, OH 44221,<br><br>        Plaintiff,<br><br>vs.<br><br>CITY OF NORTON, OH<br>4060 Columbia Woods Drive<br>Norton, OH 44203,<br><br>THADDEUS HETE, in his individual and official capacities,<br>4060 Columbia Woods Drive<br>Norton, OH 44203,<br><br>JOHN DALESSANDRO, in his individual capacity,<br>4060 Columbia Woods Drive<br>Norton, OH 44203,<br><br>and<br><br>RICHARD RYLAND, in his individual and official capacities,<br>4060 Columbia Woods Drive<br>Norton, OH 44203,<br><br>        Defendants. | |

**Complaint with Jury Demand**

1.      This is a civil-rights action brought for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et seq*. and the Ohio Civil Rights Act, Ohio Rev. Code § 4112 *et seq*.; and for violations of the United States Constitution. This complaint alleges that Defendants subjected Plaintiff Nicholas A. Matheny to a hostile work environment, terminated his employment

as a patrol officer, and retaliated against him because he adopted the Muslim faith and opposed unlawful harassment.

## Parties

2. Nicholas A. Matheny is an individual, a practicing Muslim, and a former patrol officer with the Norton Police Department. He was at all relevant times an "employee" of the City of Norton as the term is defined in 42 U.S.C. § 2000(e) *et seq.* and Ohio Rev. Code § 4112 *et seq.*

3. Defendant City of Norton is a municipality located at 4060 Columbia Woods Drive, Norton, OH 44203. Norton was at all relevant times an "employer" as the term is defined in 42 U.S.C. § 2000(e) *et seq.* and Ohio Rev. Code § 4112 *et seq.* Norton is vicariously liable for the acts of its agents, including Defendants Hete, Dalessandro, and Ryland.

4. Defendant Thaddeus Hete is the chief of the Norton Police Department, which is located at 4060 Columbia Woods Drive, Norton, OH 44203. He is sued in his individual and official capacities. At all relevant times, he was acting under color of state law.

5. Defendant John Dalessandro is a sergeant with the Norton Police Department, which is located at 4060 Columbia Woods Drive, Norton, OH 44203. He is sued in his individual capacity. At all relevant times, he was acting under color of state law.

6. Defendant Richard Ryland is the city administrator of the City of Norton, which is located at 4060 Columbia Woods Drive, Norton, OH 44203. He is sued in his individual and official capacities. At all relevant times, he was acting under color of state law.

## Jurisdiction and venue

7. Plaintiff brings his claims for religious discrimination and hostile work environment in violation of Title VII under 42 U.S.C. § 2000(e) *et seq.* He brings his constitutional claims under 42 U.S.C. § 1983. This Court has subject-matter jurisdiction under 42 U.S.C. § 2000(e)-5(f)(3) and 28 U.S.C. § 1331.

8.      This Court has supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367.

9.      The Court has personal jurisdiction over Defendants.

10.     Venue is proper under 28 U.S.C. § 1391 because the relevant events took place within the Court's jurisdiction.

## Administrative history

11.     Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission on August 15, 2011.

12.     The EEOC issued Plaintiff a right-to-sue letter on May 31, 2012.

## Facts

13.     Plaintiff began working for the City of Norton as a part-time patrol officer on or about March 24, 2004.

14.     Plaintiff resigned effective February 13, 2008 to join the Henderson Police Department in Henderson, NV.

15.     When Plaintiff left to relocate to Nevada, the City of Norton, through Administrator Richard Ryland, described Matheny as an "excellent patrolman for the City."

16.     Plaintiff's last evaluation before relocating ranked him as "outstanding" in four categories and "good" in the remaining six categories. He received no marks in the "fair," "must improve," or "poor" columns. The narrative comments from his evaluator, Sergeant Harvey Bechtel, were as follows: "Does a good job. His is very motivated and follows orders well."

17.     While Plaintiff was working in Nevada, Defendant Hete (then a lieutenant) encouraged Plaintiff to return to Ohio and resume his duties as a patrolman with the City of Norton.

18.     Because of Plaintiff's record as an excellent patrolman, Norton hired him back when he returned from Nevada a few months later. He rejoined the Norton Police Department as a part-time patrol officer on or about April 24, 2008 and was welcomed back to the department.

19.     Defendant Hete arranged for Plaintiff to be sworn in as a patrol officer the day after he returned to Ohio, and had him on the schedule for that same evening.

20.     Just after Plaintiff returned to the Norton Police Department, he received another review ranking him as "outstanding" in four categories and "good" in the remaining six. He again received no marks in the "fair," "must improve," or "poor" columns. The narrative comments from his evaluator, Sergeant Harvey Bechtel, were as follows: "Good and aggressive officer. Always finding things while on patrol."

21.     Prior to Plaintiff's adoption of the Muslim faith, he had no disciplinary write ups in his personnel file.

22.     In 2009, Plaintiff became a full-time patrol officer with the Norton Police Department.

23.     Plaintiff adopted Islam as his faith in early 2010.

24.     Plaintiff initially revealed his religious conversion only to two close friends within the department.

25.     Plaintiff decided not to publicly announce his new faith initially because of anti-Islamic sentiment in the Norton Police Department such as the anti-Islamic emails he received from his direct supervisor, Sergeant Harvey Bechtel, including while Plaintiff was on duty. Sergeant Bechtel's emails referred to Muslims as terrorists, suggested that Muslims were trying to take over the United States, and said that Muslims should go back to their own countries. The emails also indicated that President Obama was a Muslim and was part of this supposed attempt to take over American society.

26.     Plaintiff kept his new faith a private matter until distributing invitations for his wedding, which read, "May Allah Bless This Marriage" at the top. Plaintiff's fiancée was also a Muslim.

27.     In late September 2010, Plaintiff handed wedding invitations to fellow officers Jim Weiss and Ryan Burnette in the patrolman's room at the Norton Police Department.

28.     Once Plaintiff handed the invitation to Weiss, and Weiss read the language at the top of the page ("May Allah Bless This Marriage"), he spewed forth a barrage of anti-Islamic statements including the following: "Is the FBI going to be outside of Tangiers patting people down and checking to see if they are on the watch list?" "Are your in-laws going to blow the place up?" and "Are they going to be checked for shoe bombs?" He also made disparaging comments about Plaintiff's fiancée.

29.     After Weiss continued in this vein for several minutes, Plaintiff expressed passionate opposition to Weiss's discriminatory tirade. Plaintiff told Weiss that Plaintiff had converted to Islam months before, and asked if Weiss had felt unsafe during that time. When Plaintiff revealed his new faith, Weiss lunged back in complete shock and surprise. Weiss expressed displeasure that Plaintiff had not mentioned his conversion before. Plaintiff responded that his religion was his choice and none of Weiss's business.

30.     Following the incident with Weiss and the wedding invitations, and Plaintiff's corresponding public acknowledgement of his religious affiliation, it became common knowledge in the Norton Police Department that Plaintiff had Islam as his faith, and had objected to Weiss's derogatory and discriminatory comments about Muslims.

31.     Within a week of Plaintiff publicly disclosing his adoption of Islam and expressing dissent and opposition to Weiss's bigoted statements about Muslims, Plaintiff's colleagues and supervisors, including Defendant Hete, started treating Plaintiff differently. Before Plaintiff's adoption of Islam became common knowledge, he was well liked within the department and had a good relationship with his coworkers. But after his adoption of Islam became common knowledge, when Plaintiff would walk into a room at the Norton Police Department, his coworkers would not speak to him and acted like he had some terrible contagious disease. He no longer received the back up from his

fellow officers that he had before and that was necessary to the performance of his duties as a police officer.

32.    Approximately one month after Plaintiff's adoption of Islam as his faith became common knowledge and he objected to Weiss's bigotry, Norton terminated Plaintiff because of his faith and his opposition to the discriminatory harassment he had suffered.

33.    Plaintiff had good-to-outstanding reviews and an exemplary performance record with the police department until it became common knowledge that he had adopted Islam as his faith, at which point he was targeted for fabricated, backdated, and overblown write-ups that formed the pretextual basis for his unlawful termination.

34.    Several minor incidents for which Plaintiff had been given verbal counseling were transformed after the fact into written warnings, backdated, and placed in his file in an attempt to justify his firing.

35.    Once it became common knowledge in the police department that Plaintiff had adopted Islam as his faith, his performance was suddenly seen as lacking. But it had not always been that way. Before Plaintiff's faith became generally known in the department and to Defendants, he was credited as an excellent patrol officer.

36.    Shortly before Plaintiff handed out his wedding invitations (which led to his adoption of Islam becoming common knowledge in the police department), Defendant Hete had nominated Plaintiff for the upcoming Mothers Against Drunk Driving (MADD) Award Ceremony. Plaintiff's nomination was well deserved given the high number of arrests he performed, relative to the rest of the police department, of individuals operating a vehicle while under the influence of alcohol or drugs (OVI). But Chief Hete withdrew the nomination after Plaintiff's adoption of Islam became common knowledge in the police department.

37.    Before Plaintiff's adoption of Islam became known throughout the department and to Defendants, Chief Hete commented to Plaintiff that the Chief had "big plans" for Plaintiff and wanted him to sit for the upcoming sergeant's examination.

38.    Before Plaintiff's adoption of Islam became known throughout the department and to Defendants, Chief Hete often told Plaintiff to "keep up the good job."

39.    Before Plaintiff's adoption of Islam became known throughout the department and to Defendants, Plaintiff was entrusted with the responsibility of training a newly hired part-time officer and retraining an officer who was struggling with his position.

40.    On or about October 5, 2010 (shortly after Plaintiff's Muslim faith became known throughout the department and to Defendants), Defendant Hete presented Plaintiff with written warnings for minor incidents that had occurred weeks before, and for which no written warnings were given at the time those minor incidents took place.

41.    Upon information and belief, Defendant Hete convinced Sergeant John Dalessandro to place backdated write-ups in Plaintiff's personnel file. The backdated write-ups that Defendant Dalessandro put in Plaintiff's file were meant to create the impression that Plaintiff was terminated for cause, when in fact he was terminated because of his adoption of Islam and his opposition to the discriminatory harassment he had suffered.

42.    Upon information and belief, Defendant Hete tried to get Sergeant Harvey Bechtel to put backdated write-ups in Plaintiff's personnel file, but Sergeant Bechtel refused.

43.    As Plaintiff was finishing his Tuesday-night shift on Wednesday morning, October 6, 2010, Defendant Hete told Plaintiff that he needed to be in on Friday (October 8, 2012) because he was going to be fired (Plaintiff's regularly scheduled days off were Wednesday and Thursday nights). Plaintiff explained that he was off on Friday for his wedding, which would be followed by his weeklong honeymoon, and that Defendant Hete himself had approved the scheduled time off.

Defendant Hete said that was not his problem. He told Plaintiff to come alone and not bring a union representative. Plaintiff contacted the union attorney, who put off the meeting with Defendant Hete until after Plaintiff's wedding and honeymoon.

44.     Plaintiff and his wife spent their honeymoon distressed over the job threat. After Plaintiff returned from his honeymoon, he complained to Sergeant Jay Nagy about Sergeant Bechtel's hateful and bigoted emails about Muslims.

45.     Plaintiff returned to work on October 15, 2010. He worked his normal schedule (Friday to Tuesday) before having Wednesday and Thursday (Oct. 20-21) off. Plaintiff was scheduled to meet with Chief Hete on the October 21, but Defendant Hete refused to meet with Plaintiff and would speak to only the union attorney.

46.     Through the union attorney, Defendant Hete and Defendant Ryland, Norton's City Administrator, conveyed to Plaintiff that they wanted him to quit his job and that, if he did not, they would issue him disciplinary write-ups that they had prepared. (These were a step up on the disciplinary scale from the backdated "warnings" Plaintiff had received after his religious adoption and opposition to discrimination became common knowledge.) Plaintiff was told that if he agreed to accede to their demands and leave quietly, Defendants Hete and Ryland would destroy the write-ups (so they would never appear in Plaintiff's personnel file) and give Plaintiff a good reference for future employment. Plaintiff refused.

47.     On or about October 22, 2010, Patrol Officer Robert Bari, acting on orders from Chief Hete, called Plaintiff and told him not to come to work and to turn in his department-issued equipment. Bari also told Plaintiff that he could not come to the station or he would be arrested. Plaintiff had to get the union attorney to arrange for permission for Plaintiff to enter the police station to return his equipment, which he did on October 27, 2010. Bari, acting on orders from Chief Hete, also told Plaintiff that he would be arrested for trespassing if he was found on police-

department property before that time. Upon information and belief, the threat of arrest for trespass was unprecedented for other suspended employees.

48.     Thereafter, Chief Hete prepared two additional write-ups, including one with a recommendation for termination, and both related to minor incidents that had taken place before Plaintiff's Islamic faith became widely known in the police department and to Defendants. No written or verbal warnings were issued at the time those minor incidents had taken place.

49.     The City of Norton, acting through its policymaking agents including Defendants Hete, Dalessandro, and Ryland, fabricated disciplinary charges against Plaintiff, and imposed the excessive sanction of termination for those fabricated and overblown charges, despite the fact that (1) similarly situated officers who actually had committed such transgressions had not been so disciplined; (2) similarly situated officers who actually had committed such transgressions had not been disciplined as harshly for those infractions; and (3) similarly situated officers who had committed more serious infractions than those of which Plaintiff was accused had been dealt with less harshly than Plaintiff. He was treated differently because of his Islamic faith and opposition to discrimination.

50.     In mid-September 2010, Plaintiff completed qualification on the shooting range, which all officers must do periodically. Following qualification on the range, Defendant Hete (who is not firearms certified) singled out Plaintiff and asked to look at his duty weapon. When asked, Plaintiff acknowledged that he had wiped down the outside of the weapon but had not dismantled it to clean the inside. The weapon was perfectly functional. Nevertheless, Defendant Hete berated Plaintiff in the presence of other officers. After Plaintiff's adoption of Islam became commonly known in the police department and to Defendants, Defendant Hete wrote up Plaintiff on charges of failing to clean his gun and "making a false statement" about cleaning his gun that he had not made. No non-Muslim officer was subjected to such treatment.

51.     Plaintiff was due to appear in court on or about October 26, 2010 (after he had been threatened with arrest if he set foot on the grounds of the Norton Police Department). Because he had been ordered to stay away from the police station, Plaintiff was unable to access the case files he needed for the court appearance. He obtained the prosecutor's permission to miss the appearance. Chief Hete subsequently wrote up Plaintiff for failing to attend court (despite having the prosecutor's permission to miss the appearance and the inability to access the case files necessary for the appearance). No non-Muslim officer was subjected to such treatment.

52.     No Norton patrol officer besides Plaintiff has been disciplined for failing to appear for court when the officer had the prosecutor's permission not to appear.

53.     Other officers have not been disciplined for failing to appear for court (even without the prosecutor's permission), and Plaintiff has handled other officers' cases when they failed to appear.

54.     Other officers have failed to clean their duty weapons without disciplinary consequences. On one occasion, Detective John Canterbury's weapon was so dirty that it would not fire at the range. He hit the corroded gun to try to get it to work (to no avail). He suffered no discipline as a result.

55.     Other Norton officers have lied to supervisors without the severe sanction of termination. In approximately November 2010, Patrol Officer Chris Besse and Patrol Officer Jason Sams were disciplined for an August incident that involved lying to Chief Hete about a phone call Sams made to Besse to arrange an OVI stop of someone leaving the home of Sams's neighbor, with whom Sams had an acrimonious history. Patrol Officer Kevin Starling was also disciplined in relation to this incident for instructing Sams and Besse not to disclose the phone call to anyone. It was only when the court in the OVI case ordered the officers to produce their cell-phone records that the officers admitted that they had orchestrated the OVI stop and then lied about it. Those officers were given short suspensions, and permitted to take vacation time in lieu of unpaid time on suspension. Officer Besse was a probationary employee at the time having worked for the city for

less than six months when the incident with the phone call and the OVI stop occurred. These officers, who are not Muslim, were not subjected to the severe sanction of termination for these serious offenses.

56.     On or about November 3, 2010, Plaintiff met with Chief Hete, Administrator Ryland, and union attorney Max Reiker. Defendants Hete and Ryland tried to force Plaintiff to resign and issued him another write-up. Plaintiff was steadfast in his refusal to quit his job.

57.     On or about November 5, 2010, union attorney Max Reiker notified Plaintiff that he had fired with an effective date of October 27, 2010.

58.     On or about November 8, 2010, Plaintiff, through his union, filed a grievance complaining about Norton's disparate treatment of him. The city refused to arbitrate the grievance under the collective-bargaining agreement. On or about October 24, 2011, the Summit County Court of Common Pleas ordered the parties to arbitration. The city appealed that ruling.

59.     Since Plaintiff was fired, Chief Hete has stated that Plaintiff would be filing his "towelhead terrorist lawsuit" any day now. "Towelhead" is derogatory term for individuals of Arab and other descent. The term is used as a slur against Muslims generally, presumably because many Arabs are Muslim.

60.     Since Plaintiff was fired, one of the detectives at the Norton Police Department put a towel or similar item on his head and walked out of the detective-bureau office yelling loudly that he was Plaintiff.

61.     Plaintiff practicing Islam did not cause any hardship to Norton or interfere with his duties as a patrol officer.

62.     Defendants terminated Plaintiff's employment because of his religion, Islam, and his opposition to discrimination.

63.     Defendants subjected Plaintiff to a hostile work environment because of his religion.

64.    On information and belief, during Plaintiff's tenure at Norton he was the only practicing Muslim, known to Defendants, employed in the police department.

65.    All conditions precedent to filing suit have been met.

### Claim 1
### Violation of Title VII of the Civil Rights Act of 1964—Religious Discrimination via disparate treatment by Defendant City of Norton

66.    Plaintiff incorporates the preceding paragraphs as if fully restated.

67.    Title VII prohibits employers from discriminating against employees on the basis of religion.

68.    Plaintiff was given unmeritorious, overblown, and backdated write-ups and terminated because of his religion, Islam, while similarly situated non-Muslim employees were not given unmeritorious, overblown, and backdated write-ups and were not terminated.

69.    Giving Plaintiff unmeritorious, overblown, and backdated write-ups and terminating Plaintiff because of his religion, Islam, were willful, reckless, and malicious acts of unlawful discrimination against him in violation of the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.*

70.    As a direct and proximate result of Defendant's actions, Plaintiff has suffered and will continue to suffer emotional distress, inconvenience, lost wages and benefits, and other consequential damages.

### Claim 2
### Violation of Ohio Rev. Code § 4112—Religious discrimination via disparate treatment by all Defendants

71.    Plaintiff incorporates the preceding paragraphs as if fully restated.

72.    Ohio Rev. Code § 4112 *et seq.* prohibits employers from discriminating against employees on the basis of religion.

73.     Plaintiff was given unmeritorious, overblown, and backdated write-ups and terminated because of his religion, Islam, while similarly situated non-Muslim employees were not given unmeritorious, overblown, and backdated write-ups and were not terminated.

74.     Giving Plaintiff unmeritorious, overblown, and backdated write-ups and terminating Plaintiff because of his religion, Islam, were willful, reckless, and malicious acts of unlawful discrimination against him in violation of the provisions of Ohio Rev. Code § 4112 *et seq.*.

75.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered and will continue to suffer emotional distress, inconvenience, lost wages and benefits, and other consequential damages.

### Claim 3
### Retaliation in Violation of Title VII by Defendant City of Norton

76.     Plaintiff incorporates the preceding paragraphs as if fully restated.

77.     Plaintiff engaged in the protected activity of opposing Officer Weiss's bigoted tirade upon being handed Plaintiff's wedding invitation, which read "May Allah Bless This Marriage," and thus learning of Plaintiff's adoption of Islam. Plaintiff also engaged in the protected activity of objecting to Sergeant Nagy about Sergeant Bechtel's bigoted emails disparaging Muslims.

78.     Defendants were aware of Plaintiff's passionate opposition to this bigoted harassment.

79.     Thereafter, Defendants subjected Plaintiff to unmeritorious, overblown, and backdated write-ups and terminated his employment. They also allowed him to be subjected to severe and pervasive harassment by allowing and encouraging his coworkers to treat him like a pariah and refuse to back him up in the field.

80.     There was a causal connection between Plaintiff's protected activity of opposing bigoted harassment against Muslims and the adverse actions that Plaintiff suffered including the unmeritorious, overblown, and backdated write-ups and the termination of his employment, which began immediately following Plaintiff's opposition to Weiss's harassment.

81.     These retaliatory acts were willful, reckless, and malicious acts of unlawful discrimination against him in violation of the provisions of Title VII.

82.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered and will continue to suffer emotional distress, inconvenience, lost wages and benefits, and other consequential damages.

## Claim 4
### Retaliation Under Ohio Rev. Code § 4112 against all Defendants

83.     Plaintiff incorporates the preceding paragraphs as if fully restated.

84.     Plaintiff engaged in the protected activity of opposing Defendant Weiss's bigoted tirade upon being handed Plaintiff's wedding invitation, which read "May Allah Bless This Marriage," and thus learning of Plaintiff's adoption of Islam. Plaintiff also engaged in the protected activity of objecting to Sergeant Nagy about Sergeant Bechtel's bigoted emails disparaging Muslims.

85.     Defendants were aware of Plaintiff's passionate opposition to this bigoted harassment.

86.     Thereafter, Defendants subjected Plaintiff to unmeritorious, overblown, and backdated write-ups and terminated his employment. They also allowed him to be subjected to severe and pervasive harassment by allowing and encouraging his coworkers to treat him like a pariah and refuse to back him up in the field.

87.     There was a causal connection between Plaintiff's protected activity of opposing bigoted harassment against Muslims and the adverse actions that Plaintiff suffered including the unmeritorious, overblown, and backdated write-ups and the termination of his employment, which began immediately following Plaintiff's opposition to Weiss's harassment.

88.     These retaliatory acts were willful, reckless, and malicious acts of unlawful discrimination against him in violation of the provisions of Ohio Rev. Code § 4112 *et seq.*

89.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered and will continue to suffer emotional distress, inconvenience, lost wages and benefits, and other consequential damages.

## Claim 5
### Hostile Work Environment Under Title VII against Defendant City of Norton

90.     Plaintiff incorporates the preceding paragraphs as if fully restated.

91.     Plaintiff is a member of a protected class (Muslims).

92.     Plaintiff was subjected to extremely serious unwelcome religious harassment based on his Islamic faith. This included Officer Weiss's highly obnoxious and offensive comments described above, Sergeant Bechtel's anti-Islamic emails, and the campaign led by Defendants Hete and Ryland (and joined by others including, but not limited to, Defendant Dalessandro) to ostracize Plaintiff and to smear him by papering his personnel file with unmeritorious, overblown, and backdated write-ups designed to undermine his performance and pave the way for his unlawful termination.

93.     The harassment Plaintiff endured was severe and pervasive and had the effect of unreasonably interfering with his work performance and his relationships within the police department by creating an intimidating, hostile, or offensive work environment.

94.     The City of Norton is liable for the hostile work environment to which Plaintiff was subjected. Norton took no action to prevent the harassment of Plaintiff, including that perpetrated by its police chief and other supervising officers, and instead allowed the harassment to continue unabated up to and following Plaintiff's official date of discharge.

95.     A reasonable person would find the humiliating religious harassment that Plaintiff endured to be hostile and abusive, and Plaintiff perceived it to be so.

96.     This pervasive harassment was perpetrated by willful, reckless, and malicious acts of unlawful discrimination against Plaintiff in violation of the provisions of Title VII.

97.      As a direct and proximate result of Defendant's actions, Plaintiff has suffered and will continue to suffer emotional distress, inconvenience, lost wages and benefits, and other consequential damages.

## Claim 6
## Hostile Work Environment under Ohio Rev. Code § 4112 against all Defendants

98.      Plaintiff incorporates the preceding paragraphs as if fully restated.

99.      Plaintiff is a member of a protected class (Muslims).

100.      Plaintiff was subjected to extremely serious unwelcome religious harassment based on his Islamic faith. This included Officer Weiss's highly obnoxious and offensive comments described above, Sergeant Bechtel's anti-Islamic emails, and the campaign led by Defendants Hete and Ryland (and joined by others including, but not limited to, Defendant Dalessandro) to ostracize Plaintiff and to smear him by papering his personnel file with unmeritorious, overblown, and backdated write-ups designed to undermine his performance and pave the way for his unlawful termination.

101.      The harassment Plaintiff endured was severe and pervasive and had the effect of unreasonably interfering with his work performance and his relationships within the police department by creating an intimidating, hostile, or offensive work environment.

102.      The City of Norton is liable for the hostile work environment to which Plaintiff was subjected. Norton took no action to prevent the harassment of Plaintiff, including that perpetrated by its police chief and other supervising officers, and instead allowed the harassment to continue unabated up to and following Plaintiff's official date of discharge.

103.      A reasonable person would find the humiliating religious harassment that Plaintiff endured to be hostile and abusive, and Plaintiff perceived it to be so.

104.      This pervasive harassment was perpetrated by willful, reckless, and malicious acts of unlawful discrimination against Plaintiff in violation of the provisions of Ohio Rev. Code § 4112 *et seq.*

105.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered and will continue to suffer emotional distress, inconvenience, lost wages and benefits, and other consequential damages.

### Claim 7
### Denial of equal protection under 42 U.S.C. § 1983 against Defendants Hete, Dalessandro, and Ryland in their individual capacities

106.    Plaintiff incorporates the preceding paragraphs as if fully restated.

107.    Plaintiff was treated differently than similarly situated non-Muslim officers.

108.    Defendants Hete and Dalessandro ranked above Plaintiff in the chain of command and exercised supervisory authority over him.

109.    Defendants Hete, Dalessandro, and Ryland gave Plaintiff unmeritorious, overblown, and backdated write-ups and terminated his employment with a discriminatory intent and purpose.

110.    Plaintiff would not have received the unmeritorious, overblown, and backdated write-ups or been terminated but for his religious conversion to the Muslim faith and his opposition to the discriminatory harassment he endured.

111.    Defendants Hete, Dalessandro, and Ryland, acting under color of state law, deprived Plaintiff of his constitutional right to equal protection guaranteed by the Fourteenth Amendment to the United States Constitution.

112.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered and will continue to suffer emotional distress, inconvenience, lost wages and benefits, and other consequential damages.

### Claim 8
### First Amendment retaliation under 42 U.S.C. § 1983 against Defendants Hete, Dalessandro, and Ryland in their individual capacities

113.    Plaintiff incorporates the preceding paragraphs as if fully restated.

114.    Plaintiff's opposition to the discriminatory religious harassment he endured, including objecting to Weiss's tirade about Muslims and Bechtel's anti-Islamic emails, addressed matters of public concern because his rights were being violated in the workplace by the obnoxious bigotry of these public servants.

115.    Plaintiff's opposition to the bigoted harassment he endured had no impact on the efficiency of the public services the Norton Police Department performs.

116.    Plaintiff's opposition to the bigoted harassment he endured was a substantial or motivating factor in the decision to take adverse action against him including the unmeritorious, overblown, and backdated write-ups he received as well as his termination.

117.    Defendants Hete, Dalessandro, and Ryland, acting under color of state law, deprived Plaintiff of his constitutional right to free speech guaranteed by the First Amendment to the United States Constitution, made applicable to the states via the Fourteenth Amendment.

118.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered and will continue to suffer emotional distress, inconvenience, lost wages and benefits, and other consequential damages.

### Claim 9
### Violation of substantive due process under 42 U.S.C. § 1983 against Defendants Hete, Dalessandro, and Ryland in their individual capacities

119.    Plaintiff incorporates the preceding paragraphs as if fully restated.

120.    Defendants violated Plaintiff's liberty interest in not being terminated from governmental employment for a constitutionally impermissible purpose.

121.    Defendants' decision to give Plaintiff unmeritorious, overblown, and backdated write-ups and to terminate his employment because of his Islamic faith and in retaliation for complaining about unlawful harassment was arbitrary and capricious and contrary to the Equal Protection Clause

of the Fourteenth Amendment and the First Amendment's guarantees of freedom of speech and freedom of religion.

122.    Defendants Hete, Dalessandro, and Ryland, acting under color of state law, deprived Plaintiff of his constitutional right to substantive due process guaranteed by the Fourteenth Amendment to the United States Constitution.

123.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered and will continue to suffer emotional distress, inconvenience, lost wages and benefits, and other consequential damages.

**Claim 10**
**First Amendment free-exercise-of-religion infringement under 42 U.S.C. § 1983 against Defendants Hete, Dalessandro, and Ryland in their individual capacities**

124.    Plaintiff incorporates the preceding paragraphs as if fully restated.

125.    Plaintiff's right to freely exercise his religion was substantially burdened by Defendants' actions described above.

126.    Conditioning Plaintiff's job on his faith placed a substantial burden on his free exercise of his religion.

127.    Plaintiff was singled out for unmeritorious, overblown, and backdated write-ups and terminated when his adoption of Islam became common knowledge within the police department and to Defendants.

128.    The substantial burden Defendants imposed on Plaintiff's free exercise of his religious beliefs was not justified by any state interest, let alone a compelling one.

129.    Terminating Plaintiff based on his religion, Islam, will have a chilling effect his rights, and on the rights of other Muslims in the City of Norton and elsewhere, to freely practice and acknowledge their faith without fear of retribution.

130.     Defendants Hete, Dalessandro, and Ryland, acting under color of state law, deprived Plaintiff of his constitutional right to freely exercise his religion guaranteed by the First Amendment to the United States Constitution, made applicable to the states via the Fourteenth Amendment.

131.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered and will continue to suffer emotional distress, inconvenience, lost wages and benefits, and other consequential damages.

### Claim 11
### *Monell* claim against Defendants City of Norton and Defendants Hete and Ryland in their official capacities

132.     Plaintiff incorporates the preceding paragraphs as if fully restated.

133.     A municipal policy, practice, or custom of discriminating against Muslims, and discriminating and retaliating against individuals who oppose unlawful discrimination was the moving force behind the violations of Plaintiff's rights described above, including his equal-protection rights, his free-speech rights, his substantive-due-process rights, and his free-exercise rights.

134.     The decision to give Plaintiff unmeritorious, overblown, and backdated write-ups and terminate him because of his Islamic faith and in retaliation for complaining about unlawful harassment was the result of a deliberate choice by the officials responsible for establishing final policy at the City of Norton to follow that specific course of action.

135.     Defendants City of Norton, Thaddeus Hete, in his official capacity as police chief for the City of Norton, and Richard Ryland, in his official capacity as administrator for the City of Norton, acting under color of state law, deprived Plaintiff of his constitutional rights to equal protection and substantive due process guaranteed by the Fourteenth Amendment to the United States Constitution and free speech and free exercise of religion guaranteed by the First Amendment to the United States Constitution, made applicable to the states via the Fourteenth Amendment.

136.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered and will continue to suffer emotional distress, inconvenience, lost wages and benefits, and other consequential damages.

### Prayer for Relief

Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants on each and every cause of action in this complaint, and enter an order awarding the following relief:

1.    Judgment in Plaintiff's favor as to all claims for relief;

2.    Order the City of Norton to reinstate Plaintiff to his previous position with the pay, benefits, and seniority he would have achieved but for his wrongful termination;

3.    Enjoin Defendants City of Norton, Thaddeus Hete, John Dalessandro, and Richard Ryland from further discriminating against Plaintiff on the basis of his religion and from retaliating against Plaintiff for exercising his rights;

4.    Declare that Defendants' acts and conduct violated the First and Fourteenth Amendments of the U.S. Constitution under 42 U.S.C. §§ 1983 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et seq.*, as well as Ohio law;

5.    Payment for all economic damages including, but not limited to, back pay, front pay, and lost benefits that Plaintiff has suffered and is reasonably certain to suffer in the future;

6.    Payment for non-economic damages including, but not limited to, emotional harm, mental anguish, humiliation, and inconvenience that Plaintiff has suffered and is reasonably certain to suffer in the future;

7.    Attorneys' fees and costs including expert fees;

8.    Punitive damages;

9.    Statutory damages;

10.    All other legal and equitable relief to which Plaintiff is entitled, and that the Court may deem just and appropriate.

## JURY-TRIAL DEMAND

Plaintiff requests a jury trial on all issues of fact and law raised by the allegations in his complaint.

Respectfully submitted,

THE CHANDRA LAW FIRM, LLC

*/s/ Subodh Chandra*
Subodh Chandra (0069233)
Donald Screen (00440770)
Ashlie Case Sletvold (0079477)
1265 W. 6th St., Suite 400
Cleveland, OH 44113-1326
216.578.1700 Phone 216.578.1800 Fax
Subodh.Chandra@chandralaw.com
Donald.Screen@chandralaw.com
Ashlie.Sletvold@chandralaw.com

*/s/ Romin Iqbal* [per consent]
Romin Iqbal (0080146)
1505 Bethel Road, Suite 200
Columbus, OH 43220
614.783.7953 Phone 614.451.3222 Fax
rominiqbal@yahoo.com

*Attorneys for Plaintiff Nicholas A. Matheny*

## REQUEST FOR SERVICE

TO THE CLERK:

Please issue the Summons and Complaint and serve the Complaint by certified mail to Defendants listed in the Complaint's caption at the addresses listed above, making return according to law.

*/s/ Subodh Chandra*
*One of the attorneys for Plaintiff Nicholas A. Matheny*